AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court
## For The District of Columbia

**UNITED STATES OF AMERICA**

v.                                                                                 **CRIMINAL COMPLAINT**

**NELSON ALBERTO RAMIREZ-DOB: XX/X/XX; PDID: XXX-XXX**
**GUILLERMO SEGOVIA-DOB: XX/XX/XX; PDID: XXX-XXX**
**JUAN JOSE SEGOVIA-DOB: X/XX/XX; PDID: XXX-XXX**
(Name and Address of Defendant)

CASE NUMBER:

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **January 15, 2008**, in the **District of Columbia** the defendant (s) did, (Track Statutory Language of Offense)

**unlawfully, knowingly and intentionally distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.**

in violation of Title **21** United States Code, Section(s) **841(a)(1)**.

I further state that I am **DETECTIVE THOMAS SMITH**, and that this complaint is based on the following facts:

**SEE ATTACHED STATEMENT OF FACTS**

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

_____
Signature of Complainant
**DETECTIVE THOMAS SMITH**
**NARCOTICS & SPECIAL**
**INVESTIGATION DIVISION, MPD**

Sworn to before me and subscribed in my presence,

_____     at     **Washington, D.C.**_____
Date                                                                      City and State

_____          _____
**Name & Title of Judicial Officer**              **Signature of Judicial Officer**

**STATEMENT OF FACTS**

      On January 15, 2008, members of the Narcotics Special Investigation Division, conducted a narcotics operation at 6500 Piney Branch Road, NW. A confidential informant (CI) arranged to purchase two kilograms of cocaine for $24,000 each. An undercover officer (UC) and the CI arrived at the Safeway parking lot in the UC's vehicle. At approximately 6:50 p.m. all three defendants arrived in the parking lot driving a white Jeep Cherokee bearing Maryland tags. Defendant Nelson Ramirez exited the vehicle and entered the UC's vehicle sitting in the front passenger seat. The UC exited the vehicle and sat down behind the CI (who was sitting in the driver's seat). Defendant Guillermo Segovia entered the UC's vehicle and sat in the back seat carrying a black plastic bag with two kilograms of cocaine. Defendant Juan Segovia entered the UC's vehicle and sat down in the third seat of the vehicle. Defendant Guillermo Segovia handed the black plastic bag with the two kilograms of cocaine to defendant Nelson Ramirez in the front seat. Defendant Ramirez opened the bag and gave the two kilograms to the CI. The CI then gave the defendant Ramirez $6,000 in MPDC funds to count. During the deal, all three Defendant's commented about the fact that what they were selling to the CI was some "good stuff." The CI then directed the UC to go get the rest of the money for the transaction. The UC exited the vehicle and gave the signal to the arrest team to move in.

      Arrest teams moved in and all three defendants were located inside the undercover vehicle. Two kilograms were sitting on the console between the two front seats and $6000 was recovered from the front passenger seat and floorboard. Detectives of the Narcotics Special Investigation Division and Special Agents from the FBI searched the defendant's vehicle. Inside located in the back of the vehicle they located $68,500 on the floorboard where the defendant Juan Segovia was sitting. Additionally a red bag containing an additional kilogram of cocaine was found in the rear cargo area of the Cherokee. Detectives also recovered $2,000 additional dollars from defendant Ramirez. A portion of the white powder was field-tested positive for cocaine. The three packages of cocaine weighed a total of 3,387 grams.

      Subsequent to his Miranda waiver, Defendant Ramirez confessed that he had set up the deal with the CI and that both G. Segovia and J. Segovia were his brothers and had just completed another two kilogram deal with other buyers and the $68,500 was from that deal. Also, he reported that J. Segovia had talked to the CI to assist in setting up the deal and that both his brothers would have been paid based on the profits that they made from the deals.

                                            DETECTIVE THOMAS SMITH
                                            NARCOTICS & SPECIAL INVESTIGATIONS DIVISION
                                            MPD

SWORN AND SUBSCRIBED BEFORE ME ON THIS ___ DAY OF JANUARY, 2008.

                                            U.S. MAGISTRATE JUDGE